381 So.2d 452 (1980)
STATE of Louisiana
v.
April TRUMP.
No. 65495.
Supreme Court of Louisiana.
March 3, 1980.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie B. Brown, Dist. Atty., Kay Kirkpatrick, Asst. Dist. Atty., for plaintiff-respondent.
Nathan S. Fisher, Baton Rouge, for defendant-relator.
CALOGERO, Justice.[*]
Defendant is a young woman who in this case was for the first time convicted of the offense of prostitution. She had been charged with violating R.S. 14:82(b) which is "the solicitation by one person of another with the intent to engage in indiscriminate sexual intercourse with the latter for compensation". She was sentenced to twenty days in parish prison and fined $500.
Having no constitutional or statutory right to appeal (Art. 5 Sec. 5(D) La.Const., C.Cr.P. Art. 912.1) defendant applied for writs in this Court contending principally that the state presented no evidence that she solicited anyone to commit an act of sexual intercourse for compensation and that the trial judge accordingly had erred in denying her motion for directed verdict at the close of the state's evidence.
*453 We granted writs on October 8, 1979. 376 So.2d 327 (La.).
On June 6, 1978, at approximately 4:00 p. m., Officer Auster, a New Orleans police officer who was investigating vice crimes in Baton Rouge, telephoned defendant at 926-6023, a number which was suspected in connection with a call girl operation. He told defendant, who identified herself as Dana, that he was in town from New Orleans and that a guy at Dirty Harry's Bar recommended her to him. She responded that her business was strictly on a referral basis and that in order to make a date he must have a reference. Later that evening at approximately 7:30 p. m., Officer Cox telephoned defendant pretending to be one "Buck Beech" and asked to speak to "Misty." Defendant informed him that "Misty" was no longer there and that she was handling Misty's action. Officer Cox, still pretending to be Buck Beech, told defendant that he had done business with Misty and that he had referred two guys at Dirty Harry's Bar to her. A third telephone call was made by Officer Auster who asked defendant if Buck Beech had contacted her as his reference. She replied that she did not know Buck Beech but that if he came over in person maybe they could do business. Officers Auster and Jusselin went to her apartment located at 8820 Greenwell Springs Road and after identifying themselves as the New Orleans men who had telephoned earlier, they were admitted. The initial conversation focused on the occupations of the two officers. Defendant then asked to see their driver's licenses. After she was satisfied that they were from New Orleans, she stated that it would cost them $75.00 each for a half hour. Having agreed on the price, Officer Auster accompanied her into her bedroom where in due course she was arrested.
We conclude that there is merit in defendant's assignment of error No. 1, in which she contends that the trial court erred in denying defendant's motion for a directed verdict of acquittal at the close of the state's evidence. Inasmuch as we are here concerned only with the specific charge that defendant solicited the officers and in light of the fact that the evidence proved just the reverse we conclude that whatever legal or other wrong defendant may have committed she was not shown to have been guilty of violating R.S. 14:82(b):
"Prostitution is:
. . . . .

(b) The solicitation by one person of another with the intent to engage in indiscriminate sexual intercourse with the latter for compensation." R.S. 14:82 (emphasis provided)
The officers contacted defendant (it was not the reverse) at her residence (not on the street or at a bar, hotel or other public or quasi-public place) insisted on and succeeded in arranging a "date" with defendant. They went to defendant's apartment (posing as clients) and were admitted. A price was agreed upon, money exchanged hands, and then one of the officers accompanied defendant into a bedroom where they undressed and got into bed.
A few quotations on the definition of the word "solicit" suffices to show that it was the officers who were engaged in solicitation rather than defendant:
Webster's International Dictionary (3rd Edition, unabridged, 1971):
"6(c) to accost (a man) for immoral purposes and usually in the character of a prostitute."
American Heritage Dictionary (New College Edition 1976):
"3. to entice or incite (a person) to action particularly to an immoral or illegal action. 4. to approach or accost (a person) with an offer of sexual services."
Random House Dictionary of the English Language (Unabridged ed. 1967):
"4. To accost or lure (someone) with immoral intention as by or on behalf of a prostitute."
See also, Williams v. United States, 342 A.2d 367 (D.C.App.1975), State v. Walker, 247 N.W.2d 1 (Iowa 1976)
The state argues that although the police officers initiated the encounter and may *454 have solicited defendant at the outset, nonetheless defendant's ultimately quoting a price constituted an offer or solicitation and that their payment of the price was an acceptance. We do not agree. The initiative for the sexual encounter for compensation came from the officers. It was after the officers called defendant three times on the telephone and talked with her at her residence that she agreed to engage in sex for money. Perhaps under different facts there might be a police initiated encounter which is interrupted by a period in which a policeman drops his insistence that a solicitee accept money for engaging in sexual intercourse, that a later counter offer may sufficiently isolate the prostitute's conduct as a solicitation. Those facts are not present here. In this case the officers solicited defendant and after some hesitation she acceded and her price was agreed upon. The state did not present any evidence that defendant solicited the police officers.

Decree
For the foregoing reasons the conviction and sentence of defendant April Trump is reversed and set aside and defendant ordered discharged.
REVERSED.
WATSON, J., dissents and assigns reasons.
WATSON, Justice, dissenting:
Even though the police initiated the telephone contact with defendant, she was guilty of solicitation when, after first telling the officer that she worked only by referral, she later stated that she was "handling Misty's action" and that if he came over in person maybe they could do business. Therefore, I respectfully dissent and would affirm the conviction and sentence.
NOTES
[*] Chief Judge PAUL B. LANDRY, Jr., retired, participated in this decision as an Associate Justice Ad Hoc.