UNITED STATES, Appellee,

v.

Specialist Four William C. HUBBS, 353–62–3047, United States Army, Appellant.

SPCM 21130.

U.S. Army Court of Military Review.

31 July 1985.

Lieutenant Colonel Arthur L. Hunt, JAGC, Major Stephen R. Dooley, JAGC, and Captain Alan D. Groesbeck, JAGC, were on the pleadings for appellant.

Colonel James Kucera, JAGC, Lieutenant Colonel Thomas M. Curtis, JAGC, Captain Andrew D. Stewart, JAGC, and Captain Alan L. Overton, JAGC, were on the pleadings for appellee.

Before WOLD, FELDER, and NAUGHTON, Appellate Military Judges.

## OPINION OF THE COURT

WOLD, Senior Judge:

■ Appellant was tried by a military judge sitting alone as a special court-martial. Based on appellant's pleas of guilty, he was convicted of wrongful possession of "some" marijuana on 2 August 1984 and of wrongful distribution of 2.77 grams of marijuana, also on 2 August 1984.[1] Contrary to his plea, he was convicted of soliciting another to wrongfully possess and distribute lysergic acid diethylamide (LSD) in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934 (1982).

Appellant distributed the marijuana to an undercover military police investigator named Outlaw. After the marijuana distribution was completed, Outlaw indicated that he was looking for LSD to sell in his unit. The fair inference from Outlaw's comments was that he was interested in buying LSD from appellant. Appellant responded that he was temporarily out of LSD, but proposed that Outlaw become a dealer for him. Appellant then made a detailed offer of the terms for such an arrangement. This conversation was the basis for appellant's conviction of solicitation.

■ Appellant contends that since Outlaw initiated the discussion of LSD and was the first to suggest purchasing LSD from appellant for resale, appellant's response

does not constitute the offense of solicitation. The premise inherent in appellant's argument is that if a person proposes to commit a crime, society is content to allow others to encourage him to follow through with his intentions and complete the offense. This is bad logic and worse law.

The classical common law definition of solicitation is "counseling, enticing or inducing" another to commit a crime. Clark and Marshall, *Treatise on the Law of Crimes* 220 (7th ed. 1967). Other formulations include: "inducing, enticing, or influencing," *United States v. Seeloff,* 15 M.J. 978, 985 (A.C.M.R.), *pet. denied,* 17 M.J. 18 (C.M.A.1983); "any use of words or other device by which a person is requested, urged, advised, counseled, tempted, commanded, or otherwise enticed or incited to commit a crime," Perkins and Boyce, *Criminal Law,* 647 (3d ed. 1982); and "any statement or other act which may be understood to be a serious request," para. 3–178, Dept. of Army Pam. 27–9, *Military Judges' Benchbook* (1 May 1982); *see United States v. Mitchell,* 15 M.J. 214 (C.M.A. 1983). These definitions not only cover situations in which an idea is planted for the first time in the mind of another, but also, through words such as "counsel," "influence," "request," "urge," and "advise," situations in which a person already contemplating an offense is encouraged to carry it out.

This view is reinforced by consideration of the underlying purpose of the offense, which is to prevent acts of communication which make it more likely that a crime will be committed. *See United States v. Seeloff,* 15 M.J. at 984–985; W. Lafave and A. Scott, *Criminal Law* § 58 at 416–417 (1972). Whether or not the person solicited has already formed the intent to commit a crime, encouragement still makes it more likely that the crime will actually occur:

---

1. The record reflects that the marijuana which appellant distributed was only a portion of the marijuana he had previously obtained and possessed, and that appellant thus possessed "some" more marijuana than he distributed. Consequently, both convictions should stand. *United States v. Morrison,* 18 M.J. 108 (C.M.A.1984) (summary disposition); *United States v. Fair,* 17 M.J. 1036 (A.C.M.R.), *pet. denied,* 19 M.J. 121 (C.M.A.1984).

after all, people do change their minds.[2]

The findings of guilty and the sentence are affirmed.

Judge NAUGHTON concurs.

FELDER, Judge, concurring:

A comprehensive recitation of the conversation between the concerned parties is necessary for an understanding of the reasons we affirm the findings of guilty of soliciting a service-member to wrongfully possess and distribute lysergic acid diethylamide (LSD).

Immediately after the occurrence of the marijuana transaction, to which appellant pleaded guilty, the appellant, Investigator Outlaw, and Private Jackson (a confidential informant) drove to the parking lot of appellant's unit at Fort Lewis, Washington. Jackson told appellant that, "Johnny's [Outlaw] looking for some acid." Appellant inquired of Outlaw, "You looking for some acid?". Outlaw replied, "Yeah, I'm looking for some because the unit I'm in is dry and I feel like if I had some I could make some money." Appellant stated that he had just gone to Portland, Oregon, to purchase LSD but his supplier was dry.

Appellant then asked Outlaw whether he would be willing to sell LSD for him. Outlaw questioned appellant, "Do you know how much you can get me?", and his response was, "I'm not sure,". Outlaw queried, "Well, how about 50 [hits]", and appellant said, "No, I don't think I can get that much LSD". Appellant agreed to attempt to obtain twenty hits of LSD. He told Outlaw, "Well, what I'll do is give you 20 hits and you can keep five for yourself the other 15 you'll sell at $5.00 a hit." Outlaw informed appellant, "Well, there's a possibility that I can sell these for $6.00 a hit," and appellant retorted, "Well, I'm not concerned with all of that, anything over $5.00. If you make anything over $5.00 you can keep it. All I want is $5.00 a hit." Despite the quoted exchanges, appellant did not furnish LSD to Investigator Outlaw, although Jackson repeatedly urged him to do so.

Appellant appeals his conviction of solicitation on the ground that the gravamen of the offense is inducing, enticing, influencing or seriously requesting another to commit a crime under the Uniform Code of Military Justice (UCMJ) and specifically intending that the person solicited commit the crime. *United States v. Mitchell*, 15 M.J. 214 (C.M.A.1983); *United States v. Seeloff*, 15 M.J. 978 (A.C.M.R.), *pet. denied*, 17 M.J. 18 (C.M.A.1983). Appellant avers that the clear policy intent in making solicitation a crime is that a person who induces or entices another to commit a crime may cause a crime to be committed that would not otherwise have occurred. His argument is that Jackson initiated the discussion of LSD and Outlaw was the first to request LSD for resale; therefore, he could not induce or entice Outlaw to commit a crime that he had already decided to commit. According to appellant, Outlaw solicited him to possess and distribute LSD.

Appellant was charged with solicitation under Article 134, UCMJ, 10 U.S.C. § 934. The following elements constitute the offense:

(1) That the accused solicited or advised a certain person or persons to commit a certain offense under the code other than one of the four offenses named in Article 82;

(2) That the accused did so with the intent that the offense actually be committed; and

(3) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

**2.** Two cases from the Supreme Court of Louisiana dealing with the offense of solicitation of prostitution adopt a "counter-offer" test which requires "isolation" of the defendant's conduct to constitute solicitation. *State v. Jackson,* 381 So.2d 454 (La.1980); *State v. Trump,* 381 So.2d 452 (La.1980). In both cases, the defendant merely quoted a price in response to an undercover agent's proposal to purchase sex. Thus these cases are readily distinguishable as well as being contrary to the law as we see it.

Manual for Courts-Martial, United States, 1984, part IV, para. 105b. The words spoken by appellant and intentions expressed by his utterances encompass all the elements of wrongful solicitation. He earnestly requested Investigator Outlaw to sell LSD for him, after Outlaw voiced the desire to make money selling LSD. Appellant advised and counseled Outlaw regarding the quantity of LSD he could obtain, the price to charge for each hit, and the profit to be made from the sales. Apparently, appellant planned to travel from Fort Lewis, Washington, to Portland, Oregon, to obtain the drug. This indicates his sincerity in recruiting Outlaw to sell LSD. His manifest desire that Outlaw violate the UCMJ is evident. Of course, the fact that appellant expressed the willingness to furnish LSD for sale to servicemembers at Fort Lewis is service-discrediting and prejudicial to good order and discipline. *See United States v. Ettleson*, 13 M.J. 348 (C.M.A.1982); *cf. United States v. Trottier*, 9 M.J. 337 (C.M.A.1980) (holding that almost every involvement of service personnel with the commerce of drugs is service-connected and punishable by the military.)

Appellant cannot escape the sanction of the law by his claimed defense that he was first solicited by Investigator Outlaw. It is not uncommon for law enforcement officers and others acting on their behalf to encourage suspects to engage in criminal conduct as a means of identifying persons who are willing to engage in certain forms of criminal activity. This practice is most prevalent as to such crimes as prostitution, gambling, and sale of narcotics, which would otherwise go undetected. If the inducements are not so extreme as to constitute entrapment, then the practice is a permissible one. It does not constitute the crime of solicitation for a person, having reason to believe another is willing to commit a crime, to furnish an opportunity for the commission of the offense, if the purpose is, in good faith, to secure evidence against a guilty person and not to induce an innocent person to commit a crime. *People v. Clark*, 7 Ill.2d 163, 130 N.E.2d 195 (1955); *People v. Lewis*, 365 Ill. 156, 6 N.E.2d 175 (1936); W. LaFave & A. Scott, *Handbook on Criminal Law*, § 58 at 421 (1972).

For the reasons indicated above and in the principal opinion, I join in affirming the findings of guilty and the sentence.