UNITED STATES, Appellee

v.

Michael B. HAYS, Specialist
U.S. Army, Appellant

No. 04-0264

Crim. App. No. 20001100

United States Court of Appeals for the Armed Forces

Argued March 2, 2005

Decided September 30, 2005

EFFRON, J., delivered the opinion of the Court, an opinion with
respect to Issues I and II, in which GIERKE, C.J., and CRAWFORD
and BAKER, JJ., joined, and an opinion with respect to Issue IV,
in which BAKER and ERDMANN, JJ., joined.  In view of the Court's
disposition of Issue IV, it did not reach Issue III.  ERDMANN,
J., filed a dissenting opinion on Issues I and II.  GIERKE,
C.J., filed an opinion concurring in the result on Issue IV.
CRAWFORD, J., filed a dissenting opinion on Issue IV.

Counsel

For Appellant:  Captain Charles L. Pritchard Jr. (argued);
Lieutenant Colonel Mark Tellitocci and Major Allyson G. Lambert
(on brief); Colonel Mark Cremin, Colonel Robert Teetsel, and
Captain Terri J. Erisman.

For Appellee:  Captain Flor M. Suarez (argued); Colonel Steven
Salata, Lieutenant Colonel Mark Johnson, and Lieutenant Colonel
Theresa A. Gallagher (on brief); Lieutenant Colonel Margaret B.
Baines.

Military Judge:  Donna M. Wright

THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.

Judge EFFRON delivered the opinion of the Court.

At a general court-martial composed of a military judge sitting alone, Appellant was convicted, pursuant to mixed pleas, of disobeying a superior officer (two specifications); violating a general regulation; violating the Child Pornography Prevention Act (CPPA), 18 U.S.C. § 2252A (2000) (four specifications); soliciting another to rape a child; and false swearing, in violation of Articles 90, 92, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 890, 892, 934 (2000), respectively. The adjudged sentence included a dishonorable discharge, confinement for ten years, total forfeiture of pay and allowances, and reduction to the lowest enlisted grade. The convening authority approved the sentence and granted Appellant ninety-nine days of confinement credit.

In an unpublished opinion, the United States Army Court of Criminal Appeals disapproved the finding of guilty for soliciting the rape of a child but approved a finding of guilty to the lesser offense of soliciting another person to commit the offense of carnal knowledge. The court affirmed the remaining findings of guilt, reassessed the sentence, and affirmed only so much of the sentence as provided for a dishonorable discharge, confinement for 114 months, total forfeiture of pay and allowances, and reduction to the lowest enlisted grade. United

United States v. Hays, No. 04-0264/AR

States v. Hays, No. ARMY 20001100 (A. Ct. Crim. App. Jan. 22, 2004).

On Appellant's petition, we granted review of the following four issues:

> I.   WHETHER THE ARMY COURT OF CRIMINAL APPEALS ERRED IN AFFIRMING A FINDING OF GUILTY OF SOLICITATION OF CARNAL KNOWLEDGE WHERE: (1) THE COURT USED AN OVERBROAD DEFINITION OF SOLICITATION; AND (2) THE EVIDENCE WAS LEGALLY INSUFFICIENT TO SUPPORT A FINDING THAT APPELLANT SOLICITED "JOHN D___" TO COMMIT CARNAL KNOWLEDGE BECAUSE APPELLANT'S ACTS DID NOT AMOUNT TO SOLICITATION.
>
> II.   WHETHER THE ARMY COURT OF CRIMINAL APPEALS ERRED IN AFFIRMING A CONVICTION OF SOLICITATION OF CARNAL KNOWLEDGE WHERE: (1) THE COURT RELIED ON ERRONEOUSLY INTRODUCED EVIDENCE OF UNCHARGED MISCONDUCT; (2) THE COURT RELIED ON IMPROPER EXPERT TESTIMONY WHICH WAS UNHELPFUL AND AMOUNTED TO INADMISSIBLE PROFILE EVIDENCE AND LEGAL OPINIONS; AND (3) THE COURT MISTAKENLY DETERMINED THAT THE COMBINED IMPACT OF THE ERRONEOUSLY ADMITTED EXHIBITS AND THE IMPROPER EXPERT TESTIMONY WOULD NOT HAVE CHANGED THE MILITARY JUDGE'S DETERMINATION OF GUILT AT TRIAL.
>
> III.   WHETHER THE ARMY COURT OF CRIMINAL APPEALS ERRED IN FINDING THAT APPELLANT'S PLEAS OF GUILTY TO [CHILD PORNOGRAPHY OFFENSES UNDER] SPECIFICATIONS 1, 2, 3, AND 4 OF CHARGE IV WERE PROVIDENT WHERE: (1) THE MILITARY JUDGE'S DEFINITION OF CHILD PORNOGRAPHY INCLUDED COMPUTER-GENERATED IMAGES, A DEFINITION THE SUPREME COURT FOUND UNCONSTITUTIONAL; AND (2) THE MILITARY JUDGE DID NOT CONDUCT AN ADEQUATE PROVIDENCE INQUIRY AS REQUIRED BY UNITED STATES v. CARE, 18 C.M.A. 535, 40 C.M.R. 247 (1969), AND ITS PROGENY TO ESTABLISH THAT APPELLANT

3

BELIEVED THE IMAGES WERE PRODUCED USING REAL
CHILDREN.

IV. WHETHER THE FINDINGS OF GUILTY TO
DISTRIBUTION, RECEIPT, AND POSSESSION OF
CHILD PORNOGRAPHY IN VIOLATION OF 18 U.S.C.
§§ 2252A(a)(1)-(2), (2), AND (5)(a),
RESPECTIVELY, MUST BE SET ASIDE BECAUSE
THOSE STATUTES DO NOT APPLY TO CONDUCT
ENGAGED IN OUTSIDE THE TERRITORIAL LIMITS OF
THE UNITED STATES WHEN CHARGED UNDER CLAUSE
3 OF ARTICLE 134, UCMJ.

For the reasons set forth below, we affirm the decision of the
Court of Criminal Appeals, subject to modification of the child
pornography convictions as set forth in the decretal paragraph.

## I. BACKGROUND

While investigating suspected child pornography offenses,
an agent of the Army's Criminal Investigation Division (CID)
searched the e-mail accounts of a soldier stationed in Korea.
In the course of the search, one of the accounts received an
online message from a person identified as "P[ ]13." The agent
entered into an online conversation with "P[ ]13." During the
online conversation, "P[ ]13" expressed an interest in sexually
explicit pictures of girls between the ages of four and eight.
As the search of the initial suspect's e-mail accounts
continued, "P[ ]13" sent two more e-mails with attachments
containing sexually explicit photographs of children and adults.

4

United States v. Hays, No. 04-0264/AR

Based on information in the e-mails, CID identified Appellant, who was stationed in Germany, as "P[ ]13." CID then searched Appellant's e-mail accounts and U.S. Government-owned computers in the library on Vilseck Air Base in Germany. CID also collected discs located in Appellant's household goods. The information obtained from these searches provided the primary evidence for the charges at issue in the present appeal.

## II. SOLICITATION TO COMMIT CARNAL KNOWLEDGE (ISSUES I AND II)

Appellant was prosecuted under Article 134, UCMJ, for soliciting JD to rape a nine-year-old child. The offense has three elements:

> (1) That the accused solicited or advised a certain person or persons to commit a certain offense under the code other than one of the four offenses named in Article 82;
>
> (2) That the accused did so with the intent that the offense actually be committed; and
>
> (3) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

Manual for Courts-Martial, United States (2002 ed.) (MCM), pt. IV, ¶ 105.b.

At trial, the prosecution introduced e-mails that were sent and received by Appellant discussing the exchange of child

pornography and pictures.  Some of the e-mails included pictures of children and adults exposed and engaged in sexually explicit behavior.  The charge of solicitation to commit rape was based primarily on an e-mail message in which Appellant wrote the following to JD, a person apparently known to Appellant only over the internet:

> I was hoping that you would send me some more good pix before I left . . . . I hope that everything is working out with your 9 yo.  Have you f***** her yet?  If so, [d]o you have pix? . . . Man you are not going to believe it when I adopt that little girl and send you pix of me and her as I promised.  I am going to do everything to her that you can imagine.  And you will be the first to see, I promise you that much.  I hope that you can find it in your heart to send me more pix as you have in the past week or so.  If you send me more pix, I will be eternally grateful, and reward you greatly.  Please send me more!!

The court below concluded that this statement did not establish Appellant's intent that JD commit rape by force, but that it was factually sufficient to prove the lesser included offense of soliciting JD to commit the offense of carnal knowledge.  In Issues I and II, Appellant raises four challenges to the solicitation conviction, as modified by the court below: (1) whether the court employed an improper definition of solicitation; (2) whether the evidence was legally sufficient; (3) whether uncharged misconduct was improperly admitted into

evidence; and (4) whether the testimony of a Government expert witness was improperly admitted into evidence.

### A. LEGAL DEFINITION OF SOLICITATION

After discussing the elements of solicitation, the court below stated:  "Solicitation includes 'any use of words or other device by which a person is requested, urged, advised, counseled, tempted, commanded or otherwise enticed or incited to commit a crime.'"  Hays, slip. op. at 11 (citing Rollin M. Perkins & Ronald N. Boyce, Criminal Law 647 (3d ed. 1982), and United States v. Hubbs, 20 M.J. 909, 910 (A.C.M.R. 1985)). Appellant argues that this statement includes conduct that would not otherwise have been criminal under the MCM.  The interpretation of "solicitation" under Article 134 is a question of law, which we review de novo.  See, e.g., United States v. Tardif, 57 M.J. 219, 223 (C.A.A.F. 2002).

According to the MCM, "Any act or conduct which reasonably may be construed as a serious request or advice to commit [a crime under the Code] may constitute solicitation."  Pt. IV, ¶ 6.c.2.  This Court has further described solicitation under Article 134 as "an express or implicit invitation to join in a criminal plan."  United States v. Williams, 52 M.J. 218, 220 (C.A.A.F. 2000).

7

United States v. Hays, No. 04-0264/AR

The word "request" means "to ask for" and "invite" means "to offer an incentive or inducement to:  entice . . . to request formally."  Webster's Third New International Dictionary of the English Language, Unabridged 1929, 1190 (3d ed. 1981). These words are synonymous with the words in the treatise cited by the Army court.  The court supplemented the quotation from the criminal law treatise by quoting the "serious request" language from the MCM.  Hays, slip. op. at 11 ("Any writing that may be reasonably construed as a 'serious request or advice' to commit rape may constitute solicitation.  MCM, 1998, Part IV, para. 6c(2).").  In that context, we do not interpret the language in the Army court's opinion as broadening the definition of solicitation to include conduct that would not otherwise be criminal.  By quoting the synonymous terms from the criminal law treatise, the Army court merely offered additional explanation as to what constitutes a "serious request" in accordance with the established definition of solicitation.

B.  LEGAL SUFFICIENCY OF THE EVIDENCE

Legal sufficiency is a question of law, which we review de novo.  United States v. Riley, 58 M.J. 305, 311 (C.A.A.F. 2003). The test is whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a

8

reasonable doubt."  Id. (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).

The elements of solicitation require proof that Appellant "solicited or advised a certain person or persons to commit" the offense of carnal knowledge -- sexual intercourse with non-spouse under the age of sixteen -- and that Appellant "did so with the intent that the offense actually be committed."  MCM, pt. IV, ¶ 105.b (solicitation); id. pt. IV, ¶ 45.b.2 (carnal knowledge).  Appellant contends that the query in his e-mail was not a serious request because it was simply a question that "did not seek any action on [JD's] part."

The evidence demonstrates that Appellant's inquiry into whether JD had engaged in sexual intercourse with the nine-year-old girl was followed immediately by a request for pictures of such an encounter.  In the same e-mail, Appellant offered JD a quid pro quo.  He described his intention to adopt a little girl and promised to send JD pictures of engaging the girl in every sexual activity "that [JD] can imagine."  He then said that if JD sent pictures, Appellant would be "eternally grateful, and [would] reward [JD] greatly."

In order to fulfill Appellant's request, it would have been necessary for JD to engage in an act of sexual intercourse with a nine-year-old girl.  Considering the context of the e-mail -- particularly the repeated urging for JD to send pictures of him

9

engaging in sexual intercourse with the young girl, as well as the quid pro quo contained in the same e-mail -- and viewing the evidence in the light most favorable to the Government, a reasonable factfinder could have found that the inquiry constituted a serious request for JD to commit carnal knowledge with the girl.  Under these circumstances, a reasonable factfinder could infer from the tone and language of the e-mail that Appellant solicited JD to commit carnal knowledge with the intent that the offense actually be committed.

Appellant further contends that even if his words constituted a serious request to commit carnal knowledge, JD was predisposed and would have committed the offense in the absence of Appellant's request.  In Appellant's view, JD's predisposition absolved Appellant of legal responsibility for what otherwise might have been a criminal solicitation.  As support for this argument, Appellant relies upon a decision by the Army Court of Criminal Appeals describing solicitation as "seeking to induce conduct by another that that person was not already predisposed to do . . . ."  United States v. Dean, 44 M.J. 683, 685 (A. Ct. Crim. App. 1996).  Appellant acknowledges that the Army court in the present case appears to have abandoned the predisposition limitation.  Neither the UCMJ nor the MCM precludes a conviction for solicitation simply because the object of the solicitation may be predisposed towards

committing the crime.  Because there may be cases in which a solicitation transforms predisposition into action, we reject Appellant's invitation to adopt the predisposition limitation set forth in Dean.


C.   UNCHARGED MISCONDUCT

1.   Background

Appellant contends that the solicitation conviction was tainted by the improper introduction of uncharged misconduct evidence.  See Military Rule of Evidence (M.R.E.) 404(b).  The evidence at issue includes an e-mail from Appellant containing images of minors engaging in sexually explicit conduct; pictures of adults engaging in bestiality; requests from Appellant for pictures and video of children engaging in sexual activity with adults, including additional discussions with JD about the nine-year-old girl; responses to such requests; and an e-mail to multiple recipients stating that if they did not send "preteen hardcore pix," he would remove them from his trading list.

Defense counsel objected that each of the items was irrelevant, and that specific items were unduly prejudicial or contained inadmissible character evidence.  See M.R.E. 401-04.  The prosecution responded that the e-mails and pictures constituted relevant evidence of Appellant's intent at the time of the solicitation.  See M.R.E. 404(b).  The military judge

11

overruled the objections and admitted the exhibits into evidence.

In the present appeal, Appellant challenges the admissibility of each of these exhibits under the limitations on the use of uncharged misconduct in M.R.E. 404.  Appellant contends that the prosecution improperly used these exhibits "in an effort to show that appellant was a bad man with an unnatural sexual attraction to children."

We review a military judge's ruling to admit or exclude evidence for an abuse of discretion.  United States v. Grant, 56 M.J. 410, 413 (C.A.A.F. 2002).  Under M.R.E. 404(b), "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."  Such evidence may be admissible for other purposes, such as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." M.R.E. 404(b).  The admissibility of uncharged misconduct evidence is analyzed under the three-pronged test of United States v. Reynolds, 29 M.J. 105, 109 (C.M.A. 1989):  (1) Does the evidence reasonably support a finding by the court members that Appellant committed the prior crimes, wrongs, or acts?; (2) What fact of consequence is made more or less probable by the existence of the evidence?; and (3) Is the probative value of the evidence substantially outweighed by the danger of unfair

prejudice?  The evidence is inadmissible if it fails any one of these three tests.  United States v. Humpherys, 57 M.J. 83, 91 (C.A.A.F. 2002).

The Government, noting that the defense objected to most of the exhibits on relevance grounds rather than under M.R.E. 404, contends that we should review for plain error because defense counsel's objections did not preserve the uncharged misconduct issue.  We note, however, that under the Reynolds three-prong test for analyzing uncharged misconduct under M.R.E. 404, two of the three prongs involve relevance and undue prejudice under M.R.E. 401 and M.R.E. 403.  For purposes of the present appeal, we shall assume without deciding that defense counsel's objections sufficiently preserved the issue of uncharged misconduct on appeal.

2.  Discussion

The first prong of the Reynolds test asks whether the factfinder could reasonably find by a preponderance of the evidence that the misconduct occurred -- sending and receiving e-mails discussing the exchange of child pornography and pictures containing sexually explicit images of children and adults.  The exhibits at issue were sent and received by "P[ ]13," and evidence introduced at trial showed that Appellant was "P[ ]13."  This is sufficient evidence from which a reasonable

factfinder could conclude that Appellant sent and received the e-mails and pictures.

Under the second Reynolds prong, the evidence must make some fact of consequence more or less probable.  It is not sufficient, however, to introduce the evidence as evidence of Appellant's character to prove that he acted in conformity therewith.  M.R.E. 404(a); United States v. Robles-Ramos, 47 M.J. 474 (C.A.A.F. 1998).  The Government contends that the exhibits were relevant to show Appellant's intent to solicit JD to commit carnal knowledge.  See M.R.E. 404(b).  Appellant responds that the exhibits do not prove or disprove Appellant's intent to commit carnal knowledge.  According to Appellant, the exhibits only establish that Appellant enjoyed viewing child pornography, which was not a fact in controversy.

When considering whether uncharged misconduct constitutes admissible evidence of intent under M.R.E. 404(b), we consider "whether Appellant's state of mind in the commission of both the charged and uncharged acts was sufficiently similar to make the evidence of the prior acts relevant on the intent element of the charged offenses."  United States v. McDonald, 59 M.J. 426, 430 (C.A.A.F. 2004).  "Extrinsic acts evidence may be critical to the establishment of the truth as to a disputed issue, especially when that issue involves the actor's state of mind and the only means of ascertaining that mental state is by

14

drawing inferences from conduct." United States v. Tanksley, 54 M.J. 169, 176 (C.A.A.F. 2000) (quoting Huddleston v. United States, 485 U.S. 681, 685 (1988)).

The critical issue with respect to the solicitation charge in the present case was whether Appellant intended to ask JD to engage in carnal knowledge with a child so that Appellant could receive pictures of the activity. In that context, evidence of Appellant's intent is reflected in the exhibits describing his desire to engage in sexual activities with young girls, as well as through the exhibits showing that Appellant pressured a woman identified as "[PD]" to send him a videotape of her boyfriend's sexual activities with her minor daughter, and that Appellant communicated with JD about the nine-year-old girl on other occasions. In addition, the exhibits were relevant as reflecting Appellant's motive for making the request of JD. See 2 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 404.22[3] (Joseph M. McLaughlin ed., 2d ed. 2005).

The third Reynolds prong, employs the balancing test under the M.R.E. 403: whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. Although the pictures and language in the e-mails were offensive, that is the nature of much of the evidence in cases involving child pornography. See United States v. Garot, 801 F.2d 1241, 1247 (10th Cir. 1986) (noting that defendants in

United States v. Hays, No. 04-0264/AR

child pornography cases unavoidably risk the introduction of evidence that would offend an average juror).  In light of the nature of the offense and the other evidence admitted, the prejudicial impact of these exhibits did not substantially outweigh their probative value in demonstrating Appellant's intent and motive to solicit JD.  See United States v. Acton, 38 M.J. 330, 334 (C.M.A. 1993) (explaining that any prejudicial impact due to the "shocking nature" of a pornographic video depicting incest was diminished because the same conduct was already before the court members).

Furthermore, this trial was before a military judge sitting alone, and the record reflects that the military judge engaged in a balancing analysis under M.R.E. 403.  In that context, if evidence is admitted for a limited purpose, we presume a military judge will consider it only for that purpose.  See United States v. Stinson, 34 M.J. 233, 239 (C.M.A. 1992); United States v. Ray, 26 M.J. 468, 471 (C.M.A. 1988).


D.   EXPERT TESTIMONY

In support of the solicitation charge, the prosecution relied on the testimony of Kenneth Lanning, an agent of the Federal Bureau of Investigation, and assigned to the National Center for the Analysis of Violent Crime.  Mr. Lanning testified as an expert in the behavioral aspects of sexual victimization

16

of children.  Appellant challenges Mr. Lanning's testimony on two grounds:  first, that it consisted of conclusions on the ultimate issue; and second, that it constituted inadmissible profile evidence.

1.    Testimony on the ultimate issue

Mr. Lanning explained the significance of the exhibit that contained the alleged solicitation by stating that the e-mail was "attempting to entice the individual, encourage the individual to do that, by indicating that he will do a similar thing with a child and possibly send that individual pictures of that."  Defense counsel objected that the testimony "goes to the ultimate issue of intent.  I don't think the expert can give his opinion that this is actually a solicitation."  The military judge disagreed, stating:  "I don't think that's what he did. He's giving his opinion on what the language of that particular e-mail suggests and I think he can -- that's his interpretation. I think that's legitimate and I think that's within the scope of his expertise as an expert."

We review a military judge's decision to admit expert testimony for an abuse of discretion.  See United States v. Billings, 61 M.J. 163, 166 (C.A.A.F. 2005).  M.R.E. 702 provides that a witness qualified as an expert may testify as to scientific, technical, or other specialized knowledge if it will assist the factfinder in understanding the evidence or

17

determining a fact at issue.  M.R.E. 704 adds, "Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."  This rule, however, does not permit the expert to express an opinion on the "ultimate issue" of a case.  See United States v. Anderson, 51 M.J. 145, 151 (C.A.A.F. 1999).

An expert opinion interpreting a document does not necessarily constitute an ultimate opinion on the intent of the document's author.  Although Mr. Lanning used words associated with the concept of solicitation, such as "entice" and "encourage," he did not provide an opinion on the ultimate issue in this case -- whether Appellant's actions amounted to solicitation as a matter of law.  His testimony, for example, left it for the factfinder to determine whether the language in the e-mail amounted to a serious request.

A military judge, who is presumed to know and understand the law, is capable of distinguishing between the evidentiary value of such an opinion and the military judge's responsibility, as factfinder, to determine the ultimate issue of intent.  See Ray, 26 M.J. at 471.  In this case, the military judge stated that she viewed Mr. Lanning's testimony as simply providing his opinion on the language of the e-mail, an area

18

within his expertise. In the context of a judge-alone trial, admission of this expert testimony was not erroneous.

The present case is distinguishable from United States v. Byrd, 60 M.J. 4 (C.A.A.F. 2004), where we held that, under M.R.E. 701, the military judge erred by allowing the appellant's wife, a lay witness, to testify as to her opinion of the appellant's meaning in various passages of letters he wrote to her. In contrast to the wife of the appellant in Byrd, Mr. Lanning, who was accepted by the court as an expert, had a basis of knowledge for his testimony opining on the meaning of Appellant's e-mail correspondence. Appellant did not allege at trial, and has not contended on appeal, that Mr. Lanning's testimony was outside the scope of his expertise. As an expert with specialized knowledge in the field of the behavioral aspects of the sexual victimization of children, Mr. Lanning was qualified to speak to the strategies employed by sexual predators to encourage other individuals to commit sexual offenses against children and to offer his opinion as to whether this e-mail could be viewed as part of such a strategy.

2. Profile Evidence

"Profile evidence is evidence that presents a 'characteristic profile' of an offender, such as a pedophile or child abuser, and then places the accused's personal characteristics within that profile as proof of guilt." United

States v. Traum, 60 M.J. 226, 234 (C.A.A.F. 2004) (citing United States v. Rynning, 47 M.J. 420, 422 (C.A.A.F. 1998)).  As we noted in United States v. Banks, 36 M.J. 150, 161 (C.M.A. 1992): "Generally, use of any characteristic 'profile' as evidence of guilt or innocence in criminal trials is improper."

At trial, defense counsel did not object to any of Mr. Lanning's expert testimony as constituting improper profile evidence.  On appeal, however, Appellant asserts that his testimony amounted to profile evidence.  Appellant interprets Mr. Lanning's testimony as beginning with a description of the typical behavior and fantasies of a generalized group -- those who use computers to view child pornography.  According to Appellant, Mr. Lanning then applied these general characteristics to Appellant to reach the conclusion that Appellant "wanted this rape of the 9 year old girl."  Appellant summarizes Mr. Lanning's testimony as stating that Appellant fit the typical behavior patterns of a group, and because members of that group typically desire to view pictures with a "first person account," Appellant therefore intended that JD rape the girl.

In the absence of objection at trial, we apply the plain error test of United States v. Powell, 49 M.J. 460, 463-65 (C.A.A.F. 1998).  Appellant has the burden of demonstrating that there was an error, that the error was plain or obvious, and

that the error materially prejudiced Appellant's substantial rights. Under Powell, we need not assess whether there was an error if any error would not have materially prejudiced Appellant's substantial rights.

As we noted in United States v. Robbins:

> When the issue of plain error involves a judge-alone trial, an appellant faces a particularly high hurdle. A military judge is presumed to know the law and apply it correctly, is presumed capable of filtering out inadmissible evidence, and is presumed not to have relied on such evidence on the question of guilt or innocence. As a result, plain error before a military judge sitting alone is rare indeed.

52 M.J. 455, 457 (C.A.A.F. 2000) (citations omitted).

In this judge-alone trial, the military judge stated that she understood Mr. Lanning's testimony as simply interpreting the language of the e-mail. In that context, even if the testimony included profile evidence, there was no prejudice to Appellant because the military judge did not treat the testimony as profile evidence or give it any prejudicial weight in that regard. See id. at 458; United States v. Talbert, 33 M.J. 244, 247 n* (C.M.A. 1991).

### III. CHILD PORNOGRAPHY (ISSUES III AND IV)

Appellant pled guilty to the charged offenses of distributing, receiving, possessing, and soliciting others to

distribute and receive child pornography in violation of the CPPA, under clause 3 of Article 134, UCMJ.  On appeal, Appellant asserts that his pleas were improvident because: (1) the statute under which he was convicted has no extraterritorial application; and (2) the military judge employed a definition of child pornography that subsequently was determined to be unconstitutional.  In a challenge to the providence of a plea, the appellant carries the burden of showing that the record of trial demonstrates a substantial basis in law and fact for questioning the plea.  See United States v. O'Connor, 58 M.J. 450, 453 (C.A.A.F. 2003).

## A.  EXTRATERRITORIALITY

Appellant engaged in the conduct underlying the CPPA-based charges in Germany.  In United States v. Martinelli, 61 M.J. ___, ___ (2-3) (C.A.A.F. 2005), we held that the CPPA has no extraterritorial application and found that Martinelli's guilty pleas to the CCPA-based offenses for conduct occurring in Germany were improvident.  We reached a different conclusion in Martinelli with respect to one specification charging that Martinelli used e-mail to send child pornography over the Internet, citing a stipulation accompanying the plea acknowledging that the pertinent e-mails were sent through the United States.  Id. at ___ (26-29).  In the present case,

United States v. Hays, No. 04-0264/AR

Appellant did not enter into such a stipulation.[1] Under these circumstances, the plea was improvident. Accordingly, we need not address the question of whether the military judge employed an unconstitutional definition during the plea inquiry.

B. LESSER INCLUDED OFFENSES

The determination that Appellant's pleas to violating the CPPA were improvident does not end this Court's inquiry. See, e.g., Martinelli, 61 M.J. at ___ (35-40), United States v. Reeves, ___ M.J. ___, ___ (16-20) (C.A.A.F. 2005). An improvident plea to an offense of a CPPA violation charged under clause 3 of Article 134 may be upheld on a proper record as a provident plea to a lesser included offense under the first two clauses of Article 134. United States v. Mason, 60 M.J. 15, 19-20 (C.A.A.F. 2004). As explained in Reeves, "[T]he providence inquiry must reflect that the accused 'clearly understood the nature of the prohibited conduct.'" ___ M.J. at ___ (19) (quoting United States v. Sapp, 53 M.J. 90, 92 (C.A.A.F. 2000)).

---

[1] Because the Government chose to charge these offenses as occurring solely within Germany, we need not address whether Appellant's use of United States-based internet services would amount to domestic conduct for purposes of the CPPA. We also need not determine whether the evidence demonstrates that a relevant portion of Appellant's conduct occurred in the United States for purposes of the CPPA.

Prior to questioning Appellant on the four CPPA-based violations, the military judge focused Appellant's attention on the specification of Charge III.  This specification alleged that Appellant had "on divers occasions between on or about 20 September 1999 and on or about 4 March 2000" violated a specific provision of the Joint Ethics Regulation, a Department of Defense lawful general regulation, "by wrongfully receiving, viewing, and distributing child pornography and bestiality via the internet, using government computers."  It is clear from the whole of the providence inquiry that the same conduct underlying this charge also was at the heart of the CPPA-based offenses, and that Appellant was fully aware of this interrelationship.  Accordingly, it is appropriate to consider the totality of the inquiry to determine whether Appellant "clearly understood the nature of the prohibited conduct" as being a violation of clause 1 or clause 2 of Article 134.  See Reeves, ___ M.J. at ___ (19).  For purposes of this appeal, we shall assume, without deciding, that the plea inquiry did not implicate Appellant's First Amendment rights.  Compare Martinelli, 61 M.J. at ___ (37) (requiring a "more precise articulation of the servicemember's understanding" when the accused's First Amendment rights are implicated), with Reeves, ___ M.J. at ___ (18-19) (applying the standard when the servicemember's constitutional rights are not at issue).  The military judge explained to Appellant, "A

24

general regulation is lawful if it is reasonably necessary to safeguard and protect the morale, discipline, and usefulness of the members of the command and is directly connected with the maintenance of good order in the services." Appellant acknowledged this advice and admitted that the elements of the regulation offense, as explained by the military judge, accurately described his conduct. Importantly, for purposes of this appeal, the military judge asked Appellant during the inquiry into the regulation offense, "Do you believe by using these computers to access child pornography that reflected adversely on the Department of Defense?" Appellant responded, "Yes, ma'am, I do."

The military judge also questioned Appellant on each of the four CPPA-based violations (specifications 1, 2, 3, and 4 of Charge IV). With regard to the first three specifications (distribution and receipt of child pornography "on divers occasions between on or about 20 September 1999 and on or about 4 March 2000" and possession of child pornography "on or about 5 January 2000"), the military judge did not expressly discuss with Appellant whether he believed his conduct was to the "prejudice of good order and discipline in the armed forces" or was "of a nature to bring discredit upon the armed forces." Article 134, UCMJ.

25

During the inquiry regarding the first two CPPA-based specifications, Appellant admitted that he used Government computers at Vilseck Library on the local military installation to distribute and receive child pornography via his e-mail account -- the same activities on the same Government computers that Appellant indicated were involved in his violation of the lawful general regulation. Similarly, he stated that the computer discs of child pornography that he was charged with possessing had been downloaded from these same Government computers. He agreed that his conduct in receiving, distributing, and possessing child pornography was "wrongful." In connection with the inquiry into Appellant's guilty plea to the last CPPA-based specification, soliciting others to distribute and receive child pornography, Appellant left no doubt on the record as to his awareness of the impact of his conduct on the image of the armed forces:

> MJ: And you believe in doing that, your conduct was either prejudicial to good order and discipline in the Armed Forces or was of a nature to bring discredit upon the Armed Forces?
>
> ACC: I felt it was bringing discredit upon the Armed Forces, ma'am.
>
> MJ: Okay. Do you think if people outside the military knew that a soldier was doing this, it might tend to make them think less of soldiers in the military?
>
> ACC: It may, ma'am.

> MJ:  Well, do you think it would tend to --
> well, let me ask you this, do you think that
> if people knew -- if civilians knew that you
> were sending out email requesting others to
> send and receive child pornography, do you
> think that tends to make them think less of
> people in the military?
>
> ACC:  Yes, ma'am.

The plea inquiry, as a whole, includes a critical component that was absent in the inquiries conducted in Reeves.  Appellant admitted that his conduct was service-discrediting and why.  See United States v. Augustine, 53 M.J. 95, 96 (C.A.A.F. 2000); Sapp, 53 M.J. at 92.  The record shows that Appellant was convinced of the facts predicate to a conviction under clause 2 of Article 134, and that there was a sufficient factual basis for guilty pleas to the lesser included offenses under these specifications.  See Rule for Courts-Martial 910(e).  Under the facts of this case, Appellant admitted that he was using Government computers to carry out his conduct.

In that light, we conclude under Reeves that this record reflects an appropriate discussion of the character of the conduct at issue as service-discrediting and demonstrates that the accused "clearly understood the nature of the prohibited conduct" as being a violation of clause 2, apart from how it may or may not have met the elements of the separate criminal statute underlying the clause 3 charge.  ___ M.J. at ___ (19).

Accordingly, in our decretal paragraph we direct amendment of these specifications to replace the references to the CPPA with references to service-discrediting conduct. Our approval of these does not alter the essential nature of these offenses. As a result, there was no prejudice as to his sentence, so a sentence rehearing is unwarranted. See Augustine, 53 M.J. at 96; Mason, 60 M.J. at 20 (affirming the sentence).

## IV. CONCLUSION

The decision of the United States Army Court of Criminal Appeals is affirmed, except that specifications 1-4 of Charge IV are amended in each instance by deleting the words "in violation of the Child Pornography Prevention Act, 18 U.S.C." and the respective section designations, and inserting the words "conduct which was service-discrediting."

<u>United States v. Hays</u>, 04-0264/AR

ERDMANN, Judge, (concurring in part and dissenting in part):

In <u>United States v. Martinelli</u>, 61 M.J. __ (C.A.A.F. 2005), we determined that the Child Pornography Prevention Act (CPPA) has no extraterritorial application.  Under the factual circumstances presented in this case, I agree with the majority's conclusion that Hays' guilty pleas to the four CPPA-based specifications were improvident on that basis.  I therefore concur with the majority in regard to Issue IV.

As noted in <u>Martinelli</u>, an improvident plea to a CPPA-based offense may, under certain circumstances, be upheld as provident to a lesser included offense under clauses 1 or 2 of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934 (2000). Under this rationale, the majority affirms all four CPPA-based specifications under clause 2 of Article 134.  I also concur with the result reached by the majority in this regard.

I dissent, however, to the majority's resolution of Issues I and II.  Hays' acts were not legally sufficient to constitute solicitation of another to commit carnal knowledge.  Further, the military judge abused her discretion by admitting evidence of Hays' uncharged misconduct and in admitting Agent Lanning's testimony.  I would therefore reverse the Army Court of Criminal Appeals on those issues and would dismiss the specification alleging solicitation of another to commit carnal knowledge.

I. Solicitation Charge

Definition of "Solicitation"

The majority accepts the Army Court of Criminal Appeals' definition of solicitation as "'any . . . words or other device by which a person is requested, urged, advised, counseled, tempted, commanded or otherwise enticed or incited to commit a crime.'" United States v. Hays, No. ARMY 20001100, (A. Ct. Crim. App. Jan. 22, 2004) slip. op. at 11 (citation omitted). This goes well beyond the definition of solicitation found in the Manual for Courts-Martial, United States (2002 ed.)(MCM), and the prior definition adopted by this court. The President has defined solicitation as a "serious request or advice" to commit a crime. MCM, pt. IV, ¶ 6c.2. This court has further explained the term to mean an "express or implicit invitation to join a criminal plan." United States v. Williams, 52 M.J. 218, 220 (C.A.A.F. 2000).

The Army Court of Criminal Appeals has not felt constrained by these relatively straightforward definitions. In a series of opinions the Army court has adopted a number of terms to expand the definition of "solicitation".[1] In this case the Army court adopted a number of these terms, i.e., "requested, urged,

---

[1] See United States v. Seeloff, 15 M.J. 978 (A.C.M.R. 1983)(using "induce," "entice" and "influence"); United States v. Hubbs, 20 M.J. 909 (A.C.M.R. 1985) (using "counsel," "tempt," "command," "incite," "request," "urge" and "advise").

2

advised, counseled, tempted, commanded or otherwise enticed or incited." Hays, slip. op. at 11.

The majority finds that these terms are synonymous with the term "request" and since the Army court also referenced the MCM requirement of a "serious request", the terms merely offered additional explanation.[2] The term "serious request or advice" is not such a unique term that it needs such extensive supplementation. The question for the factfinder is whether the language in question constituted a serious request or advice to commit an offense. The difficulty in using a laundry list of additional terms to further define "solicitation" is that it is likely to give the impression to members that solicitation is broader than defined by the President.

I would prefer to stay with the MCM definition that solicitation is a serious request or advice to commit an offense. However, even if I were to accept the majority's definition, there is not sufficient evidence to affirm Hays' conviction.

Legal Sufficiency of the Solicitation Charge

The test for legal sufficiency is whether "considering the evidence in a light most favorable to the prosecution, a reasonable fact-finder could have found all the essential

---

[2] One must wonder if Hays' conduct constituted a "serious request", what is the need for the additional terms?

elements beyond a reasonable doubt." United States v. Walters,

58 M.J. 391, 395 (C.A.A.F. 2003). The elements that the

Government had to prove in this charge were (1) that Hays made a

serious request to Davis, (2) asking Davis to have sexual

intercourse with a person under the age of sixteen (other than

his spouse), (3) that Hays intended for Davis to agree to his

request and to actually commit the crime they were discussing,

and (4) that Hays' conduct was prejudicial to good order and

discipline or was of a nature to bring discredit to the armed

forces. MCM, pt. IV, ¶ 105.b.

The e-mail that provides the basis for the solicitation

charge, states:

> I hope that everything is working out with your 9 yo.
> Have you f***** her yet? If so, [d]o you have pix?
> Does your wife know that you do this type of stuff to
> little girls? Man you are not going to believe it
> when I adopt that little girl and send you a pix of me
> and her as I promised. I am going to do everything to
> her that you can imagine. And you will be the first
> to see, I promise you that much. I hope that you can
> find it in your heart to send me more pix as you have
> in the past week or so. If you send me more pix, I
> will be eternally grateful, and reward you greatly.
> Please send me more!!

The language of the e-mail reveals only that Hays seriously

requested sexually explicit photographs of young girls.

Although Hays initially appears to have been talking about a

particular young girl, who may or may not have existed, the

evidence is simply not sufficient to establish that Hays was

4

seriously requesting Davis to commit sexual acts with the girl. As the e-mail does constitute a serious request for images of child pornography, a solicitation charge to that offense would be legally sufficient.

There is no question that sexual crimes against minors and the area of child pornography encompass a variety of despicable crimes for which society has justifiably proscribed serious penalties. We should not, however, allow our disgust for Hays' actions color our judgment in evaluating the legal sufficiency of the charges. To conclude that Hays' e-mail was a "serious request or advice" for Davis to have sexual intercourse with a specific young girl is a stretch that the evidence simply does not support. Accordingly, I would reverse Hays' conviction for solicitation of another to commit carnal knowledge because the evidence against him was legally insufficient.

II. Evidentiary Challenges

Uncharged Misconduct

Evidence of "other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Military Rule of Evidence (M.R.E.) 404(b). As explained by the Supreme Court, the law seeks to prevent a finder of fact from concluding that an accused acted criminally in a specific instance simply because the accused is a bad or evil person:

5

> The State may not show defendant's prior trouble with the law, specific criminal acts, or ill name among his neighbors, even though such facts might logically be persuasive that he is by propensity a probable perpetrator of the crime. The inquiry is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge. The overriding policy of excluding such evidence, despite its admitted probative value, is the practical experience that its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice.

Michelson v. United States, 335 U.S. 469, 475-76 (1948) (footnotes omitted); see also United States v. Humpherys, 57 M.J. 83, 90 (C.A.A.F. 2002) ("'[E]vidence which is offered simply to prove that an accused is a bad person is not admissible' under Mil.R.Evid. 404(b), Manual for Courts-Martial, United States (2000 ed.)."). Character evidence such as information that Hays sent out many e-mails asking for sexually explicit pictures of children, that he received responses to these e-mails, that he kept many of the responses in his inbox and that the images attached to these responses are offensive, is admissible only if it meets the three-prong test set out in United States v. Reynolds, 29 M.J. 105, 109 (C.M.A. 1989):

1. Does the evidence reasonably support a finding that appellant committed prior crimes, wrongs or acts?

2. What "fact of consequence" is made more or less probable by the existence of the evidence?

3. Is the probative value of the evidence substantially outweighed by the danger of unfair prejudice?

As the majority properly notes, the first prong of Reynolds is satisfied because there was sufficient evidence from which the factfinder could conclude that Hays actually sent and received the e-mails in question.

The more difficult question is whether the military judge abused her discretion by concluding that the second and third prongs of Reynolds were also satisfied. The military judge and the majority conclude that the other e-mails and images satisfy M.R.E. 404(b) and the second prong because they were relevant to show Hays' intent to solicit Davis to commit carnal knowledge. But, as with the "solicitation" e-mail, the only fact that is made more or less probable by the existence of the other e-mails in Hays' account is the fact that Hays requested, collected, and viewed child pornography and that he was involved with a group of other individuals who shared the same interests. The existence of other vulgar and sometimes illegal e-mails in Hays' inbox does not make it more or less likely that Hays intended to seriously request an individual he knew only by e-mail address to have sexual intercourse with a particular girl under the age of sixteen. The military judge's conclusion that Hays' e-mail activities made it more likely that he intended to solicit Davis lacks both a factual and legal basis and is erroneous.

Similarly, the "other wrongs" evidence in question cannot satisfy the third prong of Reynolds. The language and tone of

7

Hays' e-mails, as well as the frequency of his requests for pornography and the nature of the images he received, which included bestiality and violent images, were prejudicial. The prosecution offered into evidence at least twenty-three exhibits consisting of e-mail messages asking for child pornography and multiple pornographic images. As discussed above, these e-mails and images have no probative value with respect to Hays' intent to commit the crime with which he is charged. Accordingly, their prejudicial effect outweighs any probative value, and they should not have been admitted.

### Agent Lanning's Testimony

Hays challenged the admission of Agent Lanning's testimony as impermissible profile evidence and also as testimony as to the ultimate legal issue, i.e., whether Hays solicited Davis to commit a crime. An expert may testify if his "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence . . . ." M.R.E. 702. An expert may offer opinions, but he may not state legal opinions. United States v. Benedict, 27 M.J. 253, 259 (C.M.A. 1988); see also MCM, Analysis of the Military Rules of Evidence A22-50.

Lanning testified that Hays wanted to "entice the individual, encourage the individual to [rape the child]" and that "he [Hays] wanted this rape of the 9 year old girl and what he, essentially, wanted was photographs of that rape."

8

United States v. Hays, 04-0264/AR

According to the definition of solicitation used by the military judge, this testimony went to the ultimate issue in this case. Lanning was not only offering expert testimony as to what the e-mail from Hays to Davis meant, he also offered his opinion on why Hays sent the e-mail -- the very question to be decided by the finder of fact.

If Lanning was put on the stand merely to interpret the language of the e-mail, as the majority asserts, it is unclear why he was qualified as an expert. The e-mail is written in English, it is not written in code, and it does not discuss any technology or other specialized areas of knowledge for which expert interpretation would be necessary. The e-mail is a document that speaks for itself, and Lanning did not have any specialized skills that were needed to interpret it. See United States v. Houser, 36 M.J. 392, 398 (C.M.A. 1993) (expert testimony not needed where factfinder is "qualified without such testimony 'to determine intelligently and to the best possible degree the particular issue.'" (citations omitted)); see also United States v. Billings, 61 M.J. 163, 170 (C.A.A.F. 2005) (Erdmann, J., concurring in part and in the result) (testimony of jeweler not necessary to educate members about characteristics of watch depicted in advertisement).

Lanning crossed the line between providing permissible expert testimony to testifying on the ultimate issue in the

9

solicitation charge –– that Hays intended to request Davis to rape the minor girl.  This is inappropriate expert testimony.  See United States v. Anderson, 51 M.J. 145, 151 (C.A.A.F. 1999) (recognizing that an expert may not express an opinion on the "ultimate issue").  Accordingly, Lanning's testimony should have been excluded as well and I therefore dissent from the majority's holding on Issues I and II.

GIERKE, Chief Judge (concurring in the result):

I join the majority regarding Issues I and II.  Regarding Issue IV, I share the result of the majority but not its analysis.  As I explained in Martinelli,[1] I believe that the Child Pornography Prevention Act (CPPA) applies extraterritorially.  Thus, I do not agree with the majority that Appellant's pleas to the CPPA-based offenses for conduct occurring in Germany were improvident based on an absence of extraterritorial application of the CPPA.  Rather, I would conclude that Appellant's pleas to the CPPA-based specifications were improvident because the military judge used an unconstitutional definition of "child pornography" during the providence inquiry.[2]  Accordingly, I agree with the majority's result that the Army Court's decision should be affirmed, and that specifications 1 through 4 of Charge IV should be amended by deleting reference to the CPPA and adding the phrase, "conduct which was service discrediting."

---

[1] See United States v. Martinelli, 61 M.J. __, __ (C.A.A.F. 2005)(Gierke, C.J., concurring in part and dissenting in part).
[2] See Ashcroft v. Free Speech Coalition, 535 U.S. 234 (2002); United States v. O'Connor, 58 M.J. 450 (C.A.A.F. 2003).

CRAWFORD, Judge (concurring in part and dissenting in part):

I concur in the majority's disposition of Issues I and II and in the affirmation of Appellant's sentence; however, I respectfully dissent from the majority's treatment of Issue IV.

In addition to the rationale provided in my dissenting opinions in United States v. O'Connor, 58 M.J. 450, 455-59 (C.A.A.F. 2003) (Crawford, C.J., dissenting), and United States v. Martinelli, 61 M.J. __, __ (C.A.A.F. 2005) (Crawford, J., dissenting), my dissent in this case is based on the specific factual aspects of Appellant's case, briefly discussed below.

### APPLICATION OF 18 U.S.C. § 2252A

Because a domestic application of the Child Pornography Prevention Act has been clearly established by the evidence in this case, the question of extraterritorial application of 18 U.S.C. § 2252A need not be addressed.

Prosecution Exhibits 4 and 17 consist of e-mails to or from Appellant with either attached or embedded photographic images of child pornography. Several of these carry the "banner" of "Yahoo! Mail" or "MSN Hotmail," both of which are United States corporations whose electronic mail servers are in the United States. Id. See Martinelli, 61 M.J. at __ (2) (Crawford, J., dissenting); United States v. Kimler, 335 F.3d 1132, 1135 n.2 (10th Cir. 2003)("In order to send and receive email messages

United States v. Hays, No. 04-0264/AR

using Hotmail, one must access the Hotmail servers, which are located in Mountain View, California, at www.hotmail.com."); United States v. Bach, 400 F.3d 622, 625 (8th Cir. 2005).

By maintaining accounts with "Hotmail" and "Yahoo! Mail," Appellant was effectively renting electronic "space" on servers located in the United States, on which he could store images of child pornography -- images that he could remotely receive, transmit, or reproduce at will, regardless of his own location at the time.  On each such occasion, Appellant was "reaching into" the United States to commit a crime.  See United States v. Moncini, 882 F.2d 401 (9th Cir. 1989).

APPELLANT'S ACKNOWLEDGMENT OF ACTUAL CHILDREN

The military judge in this case did not include the language struck down by the Supreme Court in Ashcroft v. Free Speech Coalition, 535 U.S. 234 (2002), when she explained the applicable elements and definitions to Appellant.  Appellant's plea sufficiently demonstrates his conviction that the images were of "actual" children.

The record of Appellant's Care inquiry[*] leaves no doubt whatsoever that Appellant admitted to trafficking in pornographic images of actual children:

    MJ:  Now, tell me what these pictures were of, that
         you received.

---

[*] United States v. Care, 18 C.M.A. 535, 40 C.M.R. 247 (1969).

2

ACC: They were pictures of children -- pictures of adults and children in sexual acts or children and children in sexual acts.

MJ: So it was either children with adults -- children engaging in sexual acts with adults and children engaged in sexual acts with other children, correct?

ACC: Yes, ma'am.

MJ: So, basically, two different categories?

ACC: Yes, ma'am.

MJ: And when you say "sexual acts" do you mean there was oral to genital or genital to genital contact?

ACC: Oral to genital penetration, anal penetration, genital to genital.

MJ: Okay. And do you believe these pictures were of sexually explicit conduct?

ACC: Yes, ma'am, I do.

MJ: And when you say "children," do you mean children under the age of 18?

ACC: Yes, ma'am.

. . . .

MJ: Did you know what images you were sending out?

ACC: Yes, I did, ma'am.

MJ: So you knew these images were of sexually explicit conduct involving minors?

ACC: Yes, ma'am, I did.

. . . .

MJ:   And these computer discs, you believe, contained
      images of the same type of child pornography
      you've described to me previously?

ACC:  Yes, ma'am.

MJ:   In other words, child/child sexual acts and
      child/adult sexual acts?

ACC:  Yes, ma'am.

.  .  .  .

MJ:   And what would you ask them?

ACC:  I would ask them to send me sexual photographs of
      young girls between certain ages.

MJ:   Like what ages?

ACC:  Between three years old and twelve.

.  .  .  .

Based on the prosecution exhibits, and the plea inquiry, I dissent from the majority's holding as to Issue IV.