BAKER, Chief Judge
(dissenting):
The military judge serves as the gatekeeper in assessing expert opinion evidence in accordance with Military Rule of Evidence (M.R.E.) 702. United States v. Houser, 36 M.J. 392 (C.M.A.1993); see also United States v. Billings, 61 M.J. 163, 167 (C.A.A.F.2005). The threshold for admissibility of expert testimony is whether the testimony is relevant, reliable, and will assist the trier of fact. Houser, 36 M.J. at 399-400. However, the majority appears to adopt a new and expansive test for admission of testimony by a Sexual Assault Response Coordinator (SARC) in sexual assault cases. Heretofore, Houser served as the threshold for admission of evidence under M.R.E. 702. The majority’s new approach seems to treat even the ordinary process of admitting specialized knowledge in the form of SARC testimony as if it were novel scientific evidence for which a Daubert hearing is required.[1] I would stick with the Houser test.
The majority states, as the Court did in Houser, that it is appropriate to “allow[] expert testimony on rape trauma syndrome *319 where it helps the trier of fact understand common behaviors of sexual assault victims that might otherwise seem counterintuitive.” Flesher, 73 M.J. at 313. In Houser, the Court concluded: “Certain behavioral patterns such as failure to resist or delay in reporting a rape could be confusing to the factfinders because these may be counter-intuitive.” 36 M.J. at 399. Accordingly, the evidence in this case was relevant. The SARC here also had specialized knowledge, to wit, the observational experience of having interviewed in her professional capacity thousands of alleged and confirmed victims of sexual assault. Nonetheless, this case presents a fairly close call because the record is succinct and sometimes hurried on how the military judge applied the Houser factors. However, because this Court, like Article III courts, applies a liberal standard of admission, I conclude for the reasons below that the military judge did not abuse his discretion in admitting the expert’s testimony. Therefore, I respectfully dissent.
A Standard of Review
A military judge’s decision permitting expert testimony is reviewed for an abuse of discretion. United States v. Billings, 61 M.J. 163, 166 (C.A.A.F.2005). “[Wjhen judicial action is taken in a discretionary matter, such action cannot be set aside by a reviewing court unless it has a definite and firm conviction that the court below committed a clear error of judgment_” Houser, 36 M.J. at 397 (internal quotation marks and citations omitted). Where the military judge’s analysis is clear and on the record it receives greater deference. United States v. Bush, 47 M.J. 305, 311 (C.A.A.F.1997). In the absence of analysis on the record, an appellate court will necessarily review the admission of evidence de novo. See, e.g., Metavante Corp. v. Emigrant Sav. Bank, 619 F.3d 748, 760 (7th Cir.2010); Naeem v. McKesson Drug Co., 444 F.3d 593, 607-08 (7th Cir.2006). We do not grant relief where expert testimony is erroneously admitted unless the error was prejudicial. Article 59(a), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 859(a) (2012).
B. M.R.E. 702
M.R.E. 702[2] codifies the gatekeeping function of the military judge in admitting testimony by expert witnesses. The rule contemplates that expert testimony may include “scientific, technical, or other specialized knowledge.” It follows that the threshold for admission is not necessarily the same for every proffer of expert testimony. Indeed, a witness may be “qualified as an expert by knowledge, skill, experience, training, or education.” M.R.E. 702. A novel scientific method, therefore, would require a different foundation than that, of specialized knowledge deriving from observational experience. Thus, while “expert witness” may conjure up an image of a Ph.D. trained in nuclear engineering or an M.D. trained in human genetics, the rule allows any person with “specialized knowledge” based on “experience” to serve as an expert as long as his or her testimony meets relevancy and reliability requirements. Id.
This Court also applies a “liberal” standard for admission of expert testimony. United States v. Diaz, 59 M.J. 79, 89 (C.A.A.F.2003) (citation omitted); see also United States v. Peel, 29 M.J. 235, 241 (C.M.A.1989) (“[A]d-missibility of expert testimony has been broadened. Indeed, anyone who - has substantive knowledge in a particular field which exceeds that of the average court member arguably is an expert within that field; and the type of qualification within that field that the witness possesses goes to the weight to be given the testimony and not to its admissibility.”). M.R.E. 702 tracks with the federal rule, under which expert testimony is liberal *320 ly admissible. See Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 588, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) (noting the “liberal thrust” of the Federal Rules of Evidence governing expert testimony and their “general approach of relaxing the traditional barriers to opinion testimony” (internal quotation marks and citations omitted)); see also Kopf v. Skyrm, 993 F.2d 374, 377 (4th Cir.1993) (“The witnesses] qualifications to render an expert opinion are also liberally judged by Rule 702.”); Canino v. HRP, Inc., 105 F.Supp.2d 21, 28 (N.D.N.Y.2000) (“[T]he Court’s role as gatekeeper is tempered by the liberal thrust of the Federal Rules of Evidence.... Accordingly, doubts about the usefulness of an expert’s testimony, should be resolved in favor of admissibility.” (citations and internal quotations marks omitted)); Lappe v. Am. Honda Motor Co., 857 F.Supp. 222, 227 (N.D.N.Y.1994), aff'd, 101 F.3d 682 (2d Cir.1996) (“Liberality and flexibility in evaluating qualifications should be the rule; the proposed expert should not be required to satisfy an overly narrow test of his own qualifications.”). Indeed, some Article III courts appear to view this liberal admissibility standard as relatively low. See, e.g., Hammond v. Int'l Harvester Co., 691 F.2d 646, 653 (3d Cir.1982) (automotive and mechanical equipment salesman qualified to testify as an expert in a products liability action involving a tractor even though he did not have a degree in engineering or physics and had no formal education); United States v. Johnson, 575 F.2d 1347, 1360 (5th Cir.1978) (former actor qualified to testify as an expert on the origin of marijuana even though “his qualifications came entirely from ‘the experience of being around a great deal [of marijuana] and smoking it’ ”).
C. Application of the Standard
In this ease, the Government offered testimony by Ms. Falk, the SARC, in the form of her specialized knowledge on the common behaviors of sexual assault victims. This knowledge derived from Ms. Falk’s experience as a SARC and as an advocate for “thousands” of victims of sexual assault. Because the military judge applied M.R.E. 702 to the admission of this expert opinion evidence, albeit in a preemptive manner, this Court reviews his ruling for an abuse of discretion with some deference.
Relevance. The first question is whether the proffered evidence was relevant. Appellant argued by implication that no victim would respond to sexual assault (or fail to respond) as the victim here did. In particular, the defense suggested that the victim’s failure to scream or call out to her brother or other family members in her home demonstrated consent. The Government was therefore entitled to rebut this inference with properly admitted evidence to prove its ease. As the majority affirms and as this Court stated in Houser:
Certain behavioral patterns such as failure to resist or delay in reporting a rape could be confusing to the factfinders because these may be counter-intuitive.... It is logically relevant for an expert to explain that certain behavior patterns occur in a certain percentage of rape cases or child abuse cases. This is not to say that the offense occurred but, rather, that these events may happen to some victims. Without the testimony the members are left with their own intuition.
36 M.J. at 399.
Consequently, unless this Court is overruling Houser, the expert testimony was relevant.
Reliability. Since the majority appears to concede that Ms. Falk’s testimony did not lack relevance, the reliability of her testimony will determine whether the military judge abused his discretion. Reliability, in turn, depends on whether we continue to consider the Houser factors or adopt the majority’s approach, which would effectively make Dau-bert the sole and mandatory test.
Ms. Falk was an experienced advocate for victims of sexual assault who was hired by the Department of Defense to serve as a SARC. A SARC is “[t]he single point of contact at [a military] installation or within a geographic area who oversees sexual assault awareness, prevention, and response training; coordinates medical treatment, including emergency care, for victims of sexual assault; and tracks the services provided to a victim *321 of sexual assault from the initial report through final disposition and resolution.” Dep’t of Defense Dir. 6495.01, Sexual Assault Prevention and Response Program (SAPR) 17 (Jan. 23, 2012). The eredentialing process for a SARC requires a minimum of forty hours of training for initial certification followed by an additional thirty-two hours of continuing education every two years, including on sexual assault victims’ responses to trauma. Sexual Assault Prevention and Response Office, U.S. Dep’t of Defense, Fact Sheet: SAPR Training, available at http:// www.sapr.mil/index.php/prevention/ prevention-program-elements/prevention-education. Prosecution Exhibit 6 is Ms. Falk’s curriculum vitae (CV). At the time of the military judge’s ruling, the record indicates that this exhibit was before him. The CV details Ms. Falk’s education, training, and experience working with sexual assault victims. Her duties included “short-term ... counseling” of victims of sexual assault and assisting them through the “medical, investigative, and legal process[es]” that follow their claims of sexual assault. She testified that she had worked with “[thousands [of victims claiming sexual assault]. A couple thousand probably over the years. It is generally a couple hundred per year.” She also stated that “[m]ore than a third” of those had resulted in a court-martial or civilian trial and among those “a large portion” had ended in a conviction, thereby confirming that she had interviewed actual victims of sexual assault. Exercising his “considerable leeway” in evaluating reliability, the military judge considered these qualification’s and allowed voir dire of Ms. Falk on the record. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999) (“[T]he trial judge must have considerable leeway in deciding in a particular ease how to go about determining whether particular expert testimony is reliable.”).
It seems to me it is not an abuse of discretion to conclude that a Department of the Army-trained SARC who has interviewed more than one thousand sexual assault victims would have specialized knowledge about common victim behaviors. The reliability of her testimony depends on knowledge and experience, not methodology or theory. All the more so when the military judge limited her testimony to three questions the answers to which were necessarily based on specialized knowledge drawn from informed observation as opposed to specialized scientific or technical methods. He directed trial counsel to ask Ms. Falk only “whether or not ... most victims put up a fight or not; scream or not; and who their first report is made to, law enforcement or not law enforcement.” Significantly, Ms. Falk did not testify that the behavior of the victim was consistent with that of the victims she had interviewed.
The majority nonetheless concludes that the military judge abused his discretion. Their principal objection appears to be that Ms. Falk was not an “expert in rape trauma syndrome,” but the military judge did not admit her testimony on that basis.[3] Flesher, 73 M.J. at 313. Neither is there a requirement that she be one. The majority also concludes the military judge erred by not conducting a Daubert analysis. Id. at 312-13. But Ms. Falk was not offering scientific evidence. She was offering experiential evidence — specialized knowledge — based on thousands of victim interviews. Her testimony did not involve the introduction of a “theory or technique” that “can be (and has been) tested” and “subjected to peer review and publication” or has a “known or potential rate of error.” Daubert, 509 U.S. at 593-94, 113 S.Ct. 2786.
Daubert itself emphasized that the factors were neither exclusive nor dispositive. Id. at 593, 113 S.Ct. 2786. In addition, the Advisory Committee’s note to the 2000 amendment to Federal Rule of Evidence 702 recognized that not all Daubert factors apply to every type of expert. Fed.R.Evid. 702 advisory committee’s note. In Kumho, the Court held *322 that the Daubert factors might be applicable in assessing the reliability of nonscientifie expert testimony, but that determination would depend on “the particular circumstances of the particular case at issue.” 526 U.S. at 150, 119 S.Ct. 1167. Ms. Falk was the type of expert who, rather than providing an opinion, provided testimony intended to educate the trier of fact about certain factual issues raised in the case. For this type of expert, the federal rule requires only that (1) the witness have the requisite qualifications to give expert testimony, (2) the testimony address a subject matter as to which the witness can be of help to the trier of fact, (3) the proposed testimony be reliable, and (4) the proposed testimony fit the facts of the case. See 4 Weinstein’s Federal Evidence, § 702.02[3] (2d ed. 2014). Ms. Falk testified as to what the individuals with whom she had had contact reported to her about their emotional and physical responses to sexual assault. Thus, given the defense theory of the case that the victim had consented to sexual intercourse with Appellant, in addition to Ms. Falk’s training and experience, her testimony was helpful to the members.
Assists the Factfinder. The third and final question the Houser test asks is whether the testimony will assist the members as factfin-ders. The answer to this question largely hinges on the analysis in Houser regarding counterintuitive behavior. 36 M.J. at 400. The fact is the military judge strictly limited Ms. Falk’s testimony. In the context of this case, in which the defense implied the victim did not act like a “real” victim, I do not believe the military judge erred by allowing the Government to offer the specialized knowledge of a SARC who had assisted thousands of victims of sexual assault since she could assist the factfinder in assessing defense counsel’s argument. And, of course, Ms. Falk’s testimony was not offered in a vacuum.
D. Prejudice
Even if the military judge erred, Appellant was not prejudiced. Defense counsel’s own expert witness, Christina Thomas, a Sexual Assault Nurse Examiner and emergency department nurse, served as an adequate counterweight to Ms. Falk. Her education and experience matched and arguably exceeded that of Ms. Falk. Ms. Thomas testified that “people respond to trauma or stressors in all the ways of the emotional spectrum. There is no typical way for someone to react.” Combined with Ms. Falk’s testimony, Ms. Thomas’s testimony made clear to the members that although many victims of sexual assault respond with behaviors that are often counterintuitive to the public’s expectations, they do not all react alike. She conveyed to the members that there is no single, “correct” response to sexual assault.
Defense counsel also cross-examined Ms. Falk and elicited from her an acknowledgment that as a victim advocate, she was required to believe the victim’s accusation of sexual assault. The members were thus aware of Ms. Falk’s position and function. They were not left with the impression that she was capable of evaluating the truth of a victim’s claim. Her testimony merely reflected her own experience and the consensus of the academic research on sexual assault that a victim’s fear, shame, and guilt commonly result in his or her failure to report the crime immediately. The members, therefore, were provided the proper context in which to evaluate the victim’s credibility.
Finally, the evidence against Appellant was strong. His failure even to acknowledge that he and the victim were intoxicated that night even though the victim had had at least three mixed drinks could have suggested to a reasonable trier of fact that he was being less than truthful. Appellant’s claim that he was concerned for the victim’s well-being while providing the sixteen-year-old with alcohol and cigarettes also apparently impacted his credibility. Finally, Appellant never explained why, if the victim and he had planned to have sexual intercourse, they did not do so in his home, alone, instead of in the victim’s home where three other people, including her stepfather and mother, were sleeping. These facts, rather than Ms. Falk’s brief testimony, were the reasons the members concluded that Appellant was guilty of sexual assault.
*323 For the foregoing reasons, I respectfully dissent.

. The majority states that "we do not hold that a military judge is always required to conduct a formal Daubert hearing,” United States v. Flesher, 73 M.J. 303, 312 (C.A.A.F. 2014), but at the same time "we must determine de novo whether the military judge properly followed the Daubert framework.!' Id. at 311 (internal quotation marks and citation omitted). The majority further asserts that "the most important [concern] is the fact that the military judge did not conduct even a rudimentary Daubert hearing.” Id. at 312.

. M.R.E. 702 provides:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

. While I recognize, as the American Psychiatric Association (APA) does, that sexual assault is a traumatic event that may lead to posttraumatic stress disorder, I do not use the term "rape trauma syndrome” because the APA has not listed it as an illness in the Diagnostic and Statistical Manual of Mental Disorders. Am. Psychiatric Ass’n, Diagnostic and Statistical Manual of Mental Disorders 463-68 (text rev. 4th ed. 2000).