# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**J.A. FISCHER, K.M. MCDONALD, D.C. KING**
Appellate Military Judges

### UNITED STATES OF AMERICA

v.

### JACOB G. THOMAS
### SERGEANT (E-5), U.S. MARINE CORPS

### NMCCA 201400177
### GENERAL COURT-MARTIAL

**Sentence Adjudged:** 6 December 2013.
**Military Judge:** CDR M.I. Luken, JAGC, USN.
**Convening Authority:** Commanding General, Training Command, Quantico, VA.
**Staff Judge Advocate's Recommendation:** LtCol M.E. Sayegh, USMC.
**For Appellant:** Charles D. Swift, Esq.; Capt David Peters, USMC.
**For Appellee:** Maj Suzanne Dempsey, USMC.

### 27 May 2015

---
## OPINION OF THE COURT
---

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

PER CURIAM:

A military judge, sitting as a general court-martial, convicted the appellant, contrary to his pleas, of rape by force, forcible sodomy, and adultery, in violation of Articles 120, 125, and 134, Uniform Code of Military Justice, 10 U.S.C.

§§ 920, 925, and 934.  The military judge sentenced the appellant to ninety months' confinement and a dishonorable discharge.  The convening authority (CA) "deferred" automatic forfeitures for a period of six months.[1]  He otherwise approved the sentence as adjudged and, except for the dishonorable discharge, ordered it executed.

The appellant raises two related assignments of error: (1) the military judge abused his discretion in denying expert testimony proposed by the appellant; and (2) the appellant was denied his constitutional right to present his defense and confront his accuser when the military judge denied admission of the expert testimony.

After carefully considering the record of trial, the parties' submissions, and oral argument,[2] we are convinced that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant occurred.  Arts. 59(a) and 66(c), UCMJ.

## Background

On 25 December 2010, Specialist (SPC) DS, traveled with her boyfriend, Staff Sergeant (SSgt) RC, to visit his family for Christmas.[3]  SPC DS and SSgt RC arrived in the afternoon and began socializing, eating food and drinking alcohol with the appellant and his wife.  SPC DS remembered drinking wine and hard liquor, but could not recall exactly how much she had to drink.

According to SPC DS, at some point in the evening the appellant asked her to show him her breasts, but she ignored him.  Later in the evening, the appellant and his wife left to get food for the group.  SPC DS testified that, during this time, she started feeling dizzy and nauseous from the alcohol, and that SSgt RC passed out on the living room floor from the effects of alcohol.  When the appellant and his wife returned, the appellant's wife went to their bedroom to sleep, SSgt RC remained asleep, and SPC DS did not eat because she felt sick.  She laid on the couch in the living room and pretended to be

---

[1] The six "deferred" months commenced 14 days after trial and extended to a date 48 days after the CA took his action.  The post-action perid amounted to a waiver of automatic forfeitures for that period.

[2] On 27 January 2015 we heard oral argument on both assigned errors.

[3] SPC DS and SSgt RC were both in the U.S. Army; SSgt RC and the appellant's wife are cousins.

2

asleep.  SPC DS testified that the appellant approached her while she was on the couch, put his penis on her face, and tried to put it in her mouth.  SPC DS pressed her face into the pillow so the appellant would go away, and he eventually did.  After the appellant left, SPC DS felt nauseous from alcohol and went into the bathroom to vomit.

A few moments later the appellant entered the bathroom.  SPC DS testified that while she was on her knees and bent over the toilet, the appellant tried to pull her jeans down while she attempted to pull them up, smack his hands away, tell him to stop, and to get away.  SPC DS testified that the appellant eventually got on top of her as she lay on the floor on her stomach and inserted his penis first into her vagina, then into her anus.  SPC DS testified that the appellant stopped and left when he saw his daughter in the bathroom doorway.  SPC DS explained that she wiped her vagina and anus and noted blood and semen on the toilet paper.  She also described feeling pain in her anus.  When she left the bathroom, SPC DS tried unsuccessfully to wake SSgt RC up.

The appellant testified in his own defense.  He denied ever asking SPC DS to show him her breasts and denied attempting to put his penis in her mouth.  The appellant did, however testify that he saw SPC DS enter the bathroom and went to assist her because he thought she was going to be sick.  According to the appellant, SPC DS did not vomit, but stood up from the toilet, pulled down her pants, and indicated that she wanted to have sex with him.  The appellant admitted that he had consensual sex with SPC DS and that he was intoxicated.

Both the appellant and SPC DS testified that after the incident, they talked in the living room.  According to SPC DS, the appellant admitted he raped her.  The appellant never admitted in his testimony that he raped SPC DS, but rather stated that he talked with her about his concern for any impact on his marriage and asked if they could keep the incident private.  SPC DS woke SSgt RC after the appellant left the living room and told him the appellant raped her.

Additional facts necessary for the resolution of particular assignments of error are included below.

## Expert Witness

The appellant's two assignments of error both arise from the military judge's denial of defense expert testimony.  In a

pretrial motion, the defense sought a ruling on the admissibility of expert testimony regarding "source monitoring error." The defense intended for Dr. Montalbano, a forensic psychologist, to explain the theory of source monitoring error and its potential influence on SPC DS's recall of the events on 25 December 2010.

The military judge conducted a *Daubert* hearing to determine the admissibility of the proffered testimony. Dr. Montalbano testified to his qualifications as a forensic psychologist, the materials he reviewed for the appellant's case, and the theory of source monitoring error. Dr. Montalbano testified that source monitoring error is a form of memory distortion between two events that causes "confusion about different sources of information so that when you are recalling or trying to retrieve a particular memory, you may be incorporating aspects of another memory."[4] The defense planned for Dr. Montalbano to testify about a specific incident of non-consensual sex in SPC DS's history which, in Dr. Montalbano's opinion, she possibly confused with what the appellant argued was consensual sex with him.

Dr. Montalbano testified that certain factors increase the likelihood for source monitoring error to occur, such as: (1) the perceived similarity between two events; (2) perceptual, visual, and emotional similarities between events; (3) gaps in memory; and (4) age.[5] In his opinion, it was possible that source monitoring error impacted the accuracy of SPC DS's recall of the incident with the appellant.

Most importantly, Dr. Montalbano cited and explained the case-specific factors upon which he based his opinion. Dr. Montalbano testified that the factors included: (1) SPC DS's various statements indicating that the incident in her past "was on her mind in the recent timeframe after the alleged incident";[6] (2) her interviews with the Naval Criminal Investigative Service during which "she talks about . . . how she is trying to piece together and recall what happened . . . [and] she says something to the effect at one point I blanked out";[7] (3) SPC DS's admitted

---

[4] Record at 317.

[5] *Id.* at 322, 328.

[6] *Id.* at 320.

[7] *Id.*

consumption of alcohol, which Dr. Montalbano explained can distort memory; and (4) the similarities between SPC DS's allegation that the appellant placed his penis on her face and a similar allegation from the past incident. Dr. Montalbano opined "[s]o it looks like memories of what happened before are also present with memories of what more recently occurred,"[8] referring to the allegation against the appellant. Trial defense counsel argued that the emotional and physical similarities between the past incident and interactions with the appellant could have infiltrated SPC DS's recall, and that testimony on source monitoring error was "an integral theory as a part of the defense of [SPC DS's] fabrication of the allegations."[9]

Following the *Daubert* hearing, the military judge made findings of fact and conclusions of law. He acknowledged Dr. Montalbano's testimony that source monitoring error is a recognized theory in forensic psychology and that it has been studied and published in peer-reviewed psychological journals.[10] The military judge also noted Dr. Montalbano's professional qualifications, his professional opinion that source monitoring error potentially impacted SPC DS, and the factors Dr. Montalbano identified as relevant to whether source monitoring error impacted SPC DS.[11] Despite these findings, the military judge ultimately concluded that the proffered expert testimony was irrelevant and that its probative value was substantially outweighed by the confusion and distraction it would cause to the members, as well as the waste of time caused by the inevitable "trial within a trial" involving the MILITARY RULE OF EVIDENCE 412, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.) material.[12]

Furthermore, the military judge identified several dissimilarities he found between the incident in SPC DS's past and the incident with the appellant, from which he concluded that "the commonalities between the [two incidents] . . . *are not consistent with examples where source monitoring error more*

---

[8] *Id.*

[9] *Id.* at 335.

[10] Appellate Exhibit XCIX at 4.

[11] *Id.* at 3-4.

[12] *Id.* at 8.

*likely occur* [sic}"[13] – a finding in direct contradiction to Dr. Montalbano's expert opinion. The military judge determined that Dr. Montalbano's testimony lacked probative value because it would "provide to the trier of fact only that a possibility of source monitoring error occurred."[14] Additionally, he cited the fact that there was no evidence presented that SPC DS had any "history showing episodes of source monitoring error or any other psychotic condition"[15] as a reason the expert testimony was irrelevant – a fact never addressed by Dr. Montalbano as relevant or necessary to source monitoring error. The military judge denied the appellant's motion to admit expert testimony on source monitoring error based on MIL R. EVID. 401 and 403.

The appellant argues that the military judge abused his discretion in excluding expert testimony from Dr. Montalbano. We review a military judge's ruling on the admissibility of expert testimony for an abuse of discretion. *United States v. Baker*, 70 M.J. 283, 287 (C.A.A.F. 2011). An abuse of discretion occurs when: "[the military judge's] findings of fact are clearly erroneous, the court's decision is influenced by an erroneous view of the law, or the military judge's decision on the issue at hand is outside the range of choices reasonably arising from the applicable facts and the law." *United States v. Miller*, 66 M.J. 306, 307 (C.A.A.F. 2008) (citations omitted).

An expert witness may provide testimony if it "will assist the trier of fact to understand the evidence or to determine a fact in issue . . . ." MIL. R. OF EVID. 702. However, the military judge has the responsibility to act as "gatekeeper" in determining the admissibility of expert testimony. *United States v. Billings*, 61 M.J. 163, 169 (C.A.A.F. 2005) (citations omitted). In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 593-94 (1993), the Supreme Court identified four factors a judge may consider in determining the reliability of expert testimony:

> (1) whether a theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error in using a particular scientific technique and the standards

---

[13] *Id.* at 7 (emphasis added).

[14] *Id.*

[15] *Id.* at 6.

controlling the technique's operation; and (4) whether the theory or technique has been generally accepted in the particular scientific field.

*Billings*, 61 M.J. at 168.

In addition to the *Daubert* factors, *United States v. Houser*, 36 M.J. 392, 397 (C.M.A. 1993), also provides useful criteria to determine the admissibility of expert testimony. The *Houser* factors are:

(A) the qualifications of the expert, Mil.R.Evid. 702; (B) the subject matter of the expert testimony, Mil.R.Evid. 702; (C) the basis for the expert testimony, Mil.R.Evid. 703; (D) the legal relevance of the evidence, Mil.R.Evid. 401 and 402; (E) the reliability of the evidence, *United States v. Gipson*, 24 M.J. 246 (C.M.A. 1987), and Mil.R.Evid. 401; and (F) whether the 'probative value' of the testimony outweighs other considerations, Mil.R.Evid. 403.

"[Appellate courts] review *de novo* the question whether the military judge properly followed the *Daubert* framework." *United States v. Griffin*, 50 M.J. 278, 284 (C.A.A.F. 1999) (citation omitted). If *Daubert* was properly applied, a ruling is not overturned "unless it is 'manifestly erroneous.'" *Id.* (citations omitted). "'[W]here the military judge places on the record his analysis and application of the law to the facts, deference is clearly warranted.'" *United States v. Flesher*, 73 M.J. 303, 312 (C.A.A.F. 2014) (quoting *United States v. Downing*, 56 M.J. 419, 422 (C.A.A.F. 2002)) (additional citation omitted).

Here we need not decide whether the military judge abused his discretion in denying the defense request for Dr. Montalbano's testimony because we find any error in this regard to be harmless beyond a reasonable doubt.

The military judge clearly articulated his understanding of source monitoring error both verbally and in his findings of fact and conclusions of law. In doing so, he provided significant insight into his view that Dr. Montalbano's testimony concerning source monitoring error lacked probative value in the appellant's case. Moreover, upon the conclusion of SPC DS's testimony on the merits, the military judge asked SPC DS if she believed she confused the alleged event involving the appellant with any past incident, to which SPC DS responded

"no."[16]   The military judge noted on the record that in light of
SPC DS's responses, he reconsidered his previous ruling on the
admissibility of source monitoring error testimony, and that it
did not change because SPC DS was "very direct and answering
quickly"[17], which affirmed his belief that her memory was not
confused.

Even if Dr. Montalbano's testimony may have been helpful to
members, we are confident it would not have aided the military
judge in evaluating SPC DS's credibility.  *See United States v.
Rivers*, 49 M.J. 434, 447 (C.A.A.F. 1998) (the court found any
error in the military judge's decision to deny a defense expert
on the validity of eye-witness identification to be harmless
beyond a reasonable doubt because it would not have been helpful
to the military judge factfinder in that case).  In the
appellant's case, the military judge concluded "[t]he proposed
testimony from Dr. Montalbano regarding source monitoring error
is not legally relevant . . ."[18] and that the appellant's theory
"work[ed] against the likelihood of source monitoring error
taking place here."[19]  The military judge's ruling did not
deprive the appellant of a defense that may have tipped the
credibility balance in appellant's favor because the factfinder
did not find the proposed expert testimony persuasive.  *See
Sullivan v. Louisiana*, 508 U.S. 275, 279 (1993) (the question
for a reviewing court "is not what effect the constitutional
error might generally be expected to have upon a reasonable
jury, but rather what effect it had upon the guilty verdict in
the case at hand.")

Accordingly, we find any error in excluding the proposed
expert testimony was harmless beyond a reasonable doubt and
further conclude that no error materially prejudicial to the
substantial rights of the appellant occurred.

---

[16] Record at 531-32.

[17] *Id.* at 535.

[18] AE XCIX at 8.

[19] *Id*. at 7.

## Conclusion

The findings and the sentence as approved by the CA are affirmed.

For the Court

R.H. TROIDL
Clerk of Court